**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRIS BONNEL,

        Plaintiff,

    v.

BEST BUY STORES, L.P.,

        Defendant.
_____/

No. C-12-2285 EMC

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

**(Docket No. 7)**

## I.   INTRODUCTION

Plaintiff Chris Bonnel filed this suit against Defendant Best Buy, L.P., on behalf of himself and a proposed class of all current and former "Geek Squad Installers" or "Home Theater Installers," alleging violations of California labor laws. Pending before the Court is Plaintiff's Motion to Remand on the grounds that Defendant failed to meet its burden of establishing the jurisdictional amount of $5 million to a legal certainty when it removed to this court, as is required by the Class Action Fairness Act of 2005 ("CAFA") and Ninth Circuit precedent. Mot., Docket No. 7; *see* 28 U.S.C. § 1332(d)(5)(B). Defendant responds, first, that Plaintiff's pleading is in bad faith and therefore the applicable standard of review for the sufficiency of Defendant's evidence is that of preponderance of the evidence, which Defendant claims has been satisfied; and second, that the case was properly removed pursuant to § 1332(d)(5)(B) because Defendant supported its calculation with evidence sufficient to meet the legal certainty requirement.

For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion to Remand.

## II. FACTUAL & PROCEDURAL HISTORY

Plaintiff Chris Bonnel filed a class action suit against Best Buy Stores, L.P., in the Superior Court of California for the County of Alameda on March 26, 2012, claiming violations of: (1) California Labor Code Sections 510, 1194 & 1198; (2) California Labor Code Section 226(a); and (3) California Business & Professions Code Section 17200. Not. of Rem., Docket No. 1, Ex. 3. The proposed class is defined as all current and former "Geek Squad Installers" ("GSIs"), also known as "Home Theater Installers," or those with similar titles who worked for Best Buy Stores in California from December 2007 to the present. *Id.*

Plaintiff explicitly alleges that the aggregated total amount in controversy for the class, including the value of compensatory damages, interest, penalties and attorneys' fees requested by Plaintiff, is less than $5 million. Compl. at ¶1. Similarly, Plaintiff alleges that the total amount in controversy for each individual class member, including compensatory damages, interest, and pro rata share of attorneys' fees and penalties is less than $75,000. *Id.*

Defendant removed to federal court on May 7, 2012, asserting that the federal court has original jurisdiction under CAFA because the action involves 100 or more putative class members, the amount in controversy exceeds $5 million, and at least one class member is a citizen of a state different from that of at least one defendant. Not. of Rem., Docket No. 1. Plaintiff Bonnel now moves to remand the action to state court, arguing that Defendant has failed to meet its burden of proof for removal because it did not establish the CAFA minimum jurisdictional amount to a legal certainty. Defendant argues in opposition that the amount in controversy exceeds $5 million, basing its calculation on allegations in Plaintiff Bonnel's complaint ("Plaintiff's complaint"), as well as on an unsigned, proposed complaint in a previous class action against Defendant Best Buy ("*Wilson* complaint") brought in the Eastern District of California. *Wilson v. Best Buy Stores, L.P.*, Case No. 2:10-cv-03136-GEB-KJN. The *Wilson* complaint was submitted as an attachment to a request to substitute Mr. Bonnel as a representative of the proposed *Wilson* class, which was similar to

Plaintiff's class and raises some overlapping claims.[1] The court in *Wilson* did not enter the proposed order or otherwise act on the stipulation filed by plaintiffs, and plaintiffs did not amend the complaint or file the proposed complaint in any other form with other plaintiffs. Instead, on April 5, 2012, Defendant and Mr. Wilson agreed to an individual settlement in *Wilson* in which Mr. Wilson agreed to dismiss his individual claims with prejudice, and dismiss all alleged class and representative claims without prejudice.

For the reasons set forth below, the Court agrees with Plaintiff that Defendant has failed to show the amount in controversy exceeds $5 million to a legal certainty.

### III. DISCUSSION

A.    Legal Standard

The CAFA confers federal court jurisdiction over actions in which the amount in controversy exceeds $5 million, and in which any member of the plaintiff class is a citizen of a state different from any defendant, unless at least two thirds or more of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the state in which the action was originally filed. 28 U.S.C. §§ 1332(d), 1453 (2006). The only dispute between the parties is whether the amount in controversy requirement is satisfied.

The burden of establishing removal jurisdiction under the CAFA lies with the proponent of federal jurisdiction; in this case, Defendant Best Buy. *Lowdermilk v. United States Bank National Association*, 479 F.3d 994, 997 (9th Cir. 2007) (citing *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam)).

///

///

---

[1] Wilson also represented a proposed class of all current and former Geek Squad Installers or persons with similar titles who worked for Best Buy in California. However, the relevant time period began in October 13, 2006 (rather than December 2007), and claimed violations by Defendant of California Labor Code §§ 510, 1198, 201, 202, 226(a), 2698 (PAGA); IWC Order § (5); and California Business & Professions Code § 17200. On February 16, 2012, Mr. Wilson filed a stipulation in *Wilson* stating that he could no longer effectively represent the class, and a proposed order to substitute Mr. Bonnel as the named plaintiff to represent the *Wilson* class. A proposed complaint, titled the "[Proposed] Third Amended Complaint" with Mr. Bonnel as the named plaintiff, was attached as an exhibit to the stipulation and proposed order. *Wilson* was represented by the same counsel as Plaintiff.

3

1. Standard of Proof Under *Lowdermilk*

The parties first disagree as to what standard of proof Defendant must meet in order to establish jurisdiction. In *Abrego*, the Ninth Circuit identified three different scenarios concerning the level of proof the proponent must meet. 443 F.3d at 683. First, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Id.* Second, if the plaintiff alleges damages greater than the minimum amount in controversy requirement, the requirement is presumptively satisfied unless it appears to a legal certainty that the claim is actually for less than the jurisdictional minimum. *Id.* at 683 n.8. Finally, the third scenario arises when the plaintiff's complaint alleges damages less than the jurisdictional minimum. *Id*. In *Lowdermilk*, the Ninth Circuit concluded that when a plaintiff alleges that the amount in controversy is less than the jurisdictional minimum of $5 million required by the CAFA, the defendant must show with "legal certainty" that more than $5 million is in controversy, unless plaintiff has pled in bad faith. *Lowdermilk,* 479 F.3d at 999.

Applying *Lowdermilk*, the Court must first assess whether the state-court class action plaintiff's amount in controversy pleading was specific in order to determine the appropriate standard of review. The Court "reserve[s] the preponderance of evidence standard for situations where a plaintiff 'seeks no specific amount in damages,' . . . and a court is forced to look beyond the complaint to determine whether the suit meets the jurisdictional requirements." *See Lowdermilk*, F.3d 994 at 998 (citing *Abrego Abrego*, 443 F.3d at 688 (footnote omitted)). In contrast, when a plaintiff pleads a "specific amount" of damages by alleging, *e.g.*, that damages amount to "less than five million dollars," a defendant must meet the higher standard of establishing, by a legal certainty, that the actual amount of damages would be more than the $5 million jurisdictional threshold. *See Lowdermilk*, F.3d 994 at 998.

///
///
///
///

4

1  Here, as in *Lowdermilk*, Plaintiff consistently alleges that he is seeking less than the
2  jurisdictional maximum throughout his complaint filed in state court.[2] *See Lowdermilk*, 479 F.3d at
3  999. Thus, the Court finds that Plaintiff has specifically alleged the amount in controversy and that
4  Defendant must therefore prove the jurisdictional amount in controversy to a legal certainty, absent
5  proof of bad faith. *See id.*

    2.  Judicial Notice

7  The Court next addresses Defendant's request for judicial notice, as it relates to its claim of
8  bad faith and its estimate of the amount in controversy. Under Federal Rule of Civil Procedure
9  201(b), a court may take judicial notice of an adjudicative fact not subject to reasonable dispute
10 because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be
11 accurately and readily determined from sources whose accuracy cannot reasonably be questioned."
12 Fed. R. Evid. 201(b). Defendant requests judicial notice of three documents from the *Wilson* action:
13 (1) the Stipulation and [Proposed] Order re Substitution of Class Representatives and Class
14 Certification Briefing Schedule, filed February 16, 2012; (2) the [Proposed] Third Amended Class
15 Action Complaint, filed the same day (with Bonnel as the proposed plaintiff representative); and (3)
16 the Order Denying Motion to Remand issued in *Wilson*. Docket 19 at 1 ("Request for Judicial
17 Notice").

18 The Court "may take judicial notice of court filings and other matters of public record."
19 *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 74 (9th Cir. 2006), but not of a fact that is
20 "subject to reasonable dispute." Fed. R. Evid. 201(b); *see MGIC Indem. Corp. v. Weisman*, 803
21 F.2d 500, 504 (9th Cir. 1986). Judicial notice is appropriate here because the requested documents
22 are from sources whose accuracy cannot reasonably be questioned, as they were filed in the Eastern
23 District of California, and are also a matter of public record.

---

[2] The allegation is repeated in Plaintiff's prayer for relief, and he has also included a request for attorney's fees in each cause of action. *Cf. Guglielmino v. McKee*, 506 F.3d 696, 701 (9th Cir. 2007) (suggesting that plaintiff failed to allege a sufficiently specific total amount in controversy under *Lowdermilk* because, while plaintiff alleged that recovery was less than $5 million, the allegation was not repeated in the Prayer for Relief and did not include a request for attorneys' fees).

5

However, as granted, the judicial facts thereby noticed are merely that at some point, the *Wilson* class sought to replace Mr. Wilson with Mr. Bonnel as the named plaintiff, and that the proposed complaint for that action stated certain allegations, some of which are similar to those raised by Mr. Bonnel in the instant case. Further, the *Wilson* complaint contains different causes of action from Plaintiff's complaint here, and is based on a different and longer relevant time period, one that begins in 2006, rather than 2007, as does Plaintiff's complaint. No further action was taken on the proposed change of named plaintiff in *Wilson*, no order was granted, and the complaint was not filed. Mr. Wilson and Defendant settled and the claims were dismissed without Mr. Bonnel ever representing the class. Thus, the allegations in the proposal may be noticed by the Court for the limited purpose of establishing they were contained in documents filed in the *Wilson* action, but there is not notice taken of the alleged facts themselves to demonstrate the amount in controversy to a legal certainty. *See Lowdermilk,* 479 F.3d at 1002; *see also Cifuentes v. Red Robin Intern., Inc.*, 2012 WL 693930 at *3 (N.D. Cal. Mar. 1, 2012); *Gaus v. Miles*, 980 F.2d 564, 567 (1992) (pre-CAFA).

3. Bad Faith

Defendant alleges that Plaintiff has pled in bad faith and therefore the legal certainty standard no longer applies. Bad faith would alter the applicable standard of review where a Plaintiff pleads in such a way as to avoid federal jurisdiction, but does so knowing that the claims made actually seek an amount above the jurisdictional threshold. *See Lowdermilk*, 479 F.3d at 1001 (quoting *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995)). However, defendant must generally show bad faith in a pleading by proving that plaintiff is actually pleading more than $5 million, essentially collapsing the inquiries of bad faith and the amount in controversy. *Id.* at 999 (citing *Morgan*, 471 F.3d at 474, for the proposition that "[g]ood faith in [the CAFA] context is entwined with the legal certainty test, so that a defendant will be able to remove the case to federal court by showing to a legal certainty that the amount in controversy exceeds the statutory minimum").

Defendant alleges bad faith through Plaintiff's "intentional[] pleading around the requirements of federal jurisdiction." To support its claim, Defendant relies on the proposed

6

1 complaint from *Wilson* and points to the differences in the two pleadings as evidence that Plaintiff
2 "sought to plead around the requirements of federal jurisdiction by excluding from the Complaint
3 those specific factual allegations he had included in the [*Wilson* complaint]."

4     Defendant's argument is without merit. The Ninth Circuit holds that "a plaintiff may sue for
5 less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in
6 state court." *Lowdermilk*, 479 F.3d at 999. In as much as Defendant asserts that Plaintiff excludes
7 certain allegations to avoid federal jurisdiction, such a pleading is not itself bad faith. *See id.* at 999
8 (holding that plaintiff may plead conservatively to secure state forum, especially where plaintiff
9 cannot anticipate from the outset the value of his or her case).

10     Here, the *Wilson* complaint does not prove bad faith. Not only is the *Wilson* complaint
11 devoid of a dollar figure, but *Wilson* asserts more claims than Plaintiff herein and for a longer time
12 period. The Plaintiff herein has the right to file a narrower case than Wilson; that alone does not
13 establish bad faith. *Lowdermilk*, 479 F.3d at 999.

14     *Lowdermilk* merely requires that Plaintiff "*currently* seek[s] damages" that do not exceed $5
15 million. *Lowdermilk,* 479 F.3d at 1003. Such a requirement is consistent with the natural
16 progression of litigation that allows good faith changes to allegations based on new information
17 revealed through discovery. Plaintiff's counsel averred at oral argument that he is currently seeking
18 less than $5 million, and that he filed the current complaint based on information developed from
19 discovery from *Wilson* which undermined certain allegations in that case (such as the revelation that
20 the work computers were not uniformly used over the relevant time period).[3] Because Defendant
21 has not established bad faith on the part of Plaintiff, the legal certainty standard applies under
22 *Lowdermilk*.

---

[3] To the extent that Defendant attempts to read the Ninth Circuit's recent, unpublished decision in *Campbell v. Vitran Exp., Inc.* to require that Plaintiff stipulate to $5 million, such a reading is not warranted and, in any event, the case is not precedential. *See* 471 F. App'x 646, 2012 WL 746276 (9th Cir. Mar. 8, 2012) (unpublished). Moreover, *Lowdermilk* specifically credits a plaintiff's allegation that it is "currently seeking" damages that do not exceed the jurisdictional minimum. Further, Defendant does not have only one bite at the apple: as discovery progresses, if in fact it becomes clear that there is a basis for federal jurisdiction, Defendant can once again seek removal.

7

1    Furthermore, as noted above, to establish bad faith, the removing defendant must prove
2 damages exceed $5 Million notwithstanding the plaintiff's allegations to the contrary with the same
3 certainty as the legal certain standard of *Loudermilk*. Thus, the Court turns to that standard.

4 B.   Application of the "Legal Certainty" Standard

5    Though the standard for "legal certainty" is difficult to define, at the very least it requires
6 defendant to provide enough "*concrete evidence* . . . to estimate" that the actual amount controversy
7 is over $5 million. *See Lowdermilk*, 479 F.3d at 1000 (emphasis added). While the standard does
8 not require defendant to prove the plaintiff's case, the defendant must produce enough evidence to
9 allow a court "to estimate with . . . certainty the actual amount in controversy." *Id.* at 1001. Hence,
10 mere reliance on the plaintiffs pleadings or unsupported affidavits, without more, is insufficient to
11 demonstrate the amount in controversy. *See Cifuentes*, 2012 WL 693930, at *4 (holding that
12 defendant may not meet its burden to show with "legal certainty" that the amount in controversy in
13 this case exceeds the $5 million minimum by merely taking as true the allegations in the complaint).
14 A court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." *Lowdermilk*,
15 479 F.3d at 1002. It is therefore "a high bar for the party seeking removal, but it is not
16 insurmountable." *Id.* Thus, a defendant must set forth the underlying facts supporting its assertion
17 that the amount in controversy exceeds the statutory minimum. *Gaus v. Miles*, 980 F.2d 564, 567
18 (9th Cir. 1992) (pre-CAFA case holding that defendant's unsupported allegation that amount in
19 controversy exceeded $50,000 did not overcome strong presumption against removal jurisdiction).

20    In *Lowdermilk*, the Ninth Circuit remanded plaintiff's claim to state court upon finding that
21 the defendant-employer's calculation of the amount in controversy was poorly supported by
22 evidence and was based on unsupported assumptions because it improperly assumed that all
23 employees in the class would be entitled to receive the maximum damages of 30 days of penalty
24 wages even though "[m]any employees may have been paid only a few days late and, consequently,
25 would be entitled to fewer days of penalty wages." 479 F.3d at 1000-02. Specifically, the court
26 concluded that the defendant failed to establish the jurisdictional amount in controversy to a legal
27 certainty because it left the court to speculate as to whether the class members actually qualified for
28 penalty wages, and the amount of unpaid wages owed. *Id.* at 1002. Thus, "absent more concrete

evidence, it [was] nearly impossible to estimate with any certainty the actual amount in controversy." *Id.* at 1001.

In this case, Defendant commits the same error. Defendant admitted at oral argument that it based its calculations on Plaintiffs allegations, supplemented only by allegations from the *Wilson* complaint. It proffered no other evidence with the exception of a single conclusory affidavit, even though it could have given its access to and possession of employment records. Such exclusive reliance on the allegations is impermissible, since Defendant has not supported its calculations (or the allegations) with any "concrete evidence." *Lowdermilk*, 479 F.3d at 1001. Further, even if Defendant were allowed simply to compare the complaint to the *Wilson* complaint, it cannot graft the *Wilson* allegations onto Plaintiff's complaint simply because the plaintiff classes are purportedly similar.[4] Plaintiff is the master of his complaint, and "may plead conservatively to secure a state forum." *Lowdermilk*, 479 F.3d at 1003. The *Wilson* complaint is a different case, which settled without any adjudication of the claims.

Defendant asserted at oral argument that its calculations are based on its taking Plaintiff's allegations as true. However, Defendant has not taken Plaintiff's pleading as true – it has added allegations from *Wilson*, even where they conflict with Plaintiff's claims. The *Wilson* allegations are not evidence herein.

In addition, under *Lowdermilk*, Defendant must support its calculations with "concrete evidence."[5] *Lowdermilk*, 479 F.3d at 1001. Here, Defendant's only supporting evidence is an

---

[4] *E.g.*, that the work computers alleged in *Wilson* were not uniformly used over the relevant time period, which affected every allegation in the *Wilson* complaint, and informed Plaintiff's claims.

[5] Insofar as Defendant relies on *Vitran* for the proposition that it must take as true Plaintiff's allegations, *Vitran* cites as support for its review *Valdez v. Allstate Ins. Co.*, a pre-CAFA case that endorses the Fifth Circuit's practice of considering facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal'" under a *preponderance of the evidence* rather than legal certainty. *See* 372 F.3d 1115 (9th Cir. 2004). Further, while the *Vitran* court purports to apply the legal certainty test, it notes that plaintiff did not represent that the amount they sought was less than $5 million, thus "distinguish[ing] th[e] case from *Lowdermilk*." *Vitran*, 2012 WL 746276 at * 1. Here, Plaintiff's pleading is identical to that in *Lowdermilk*, and Plaintiff's counsel consistently maintained that he currently is seeking damages that do not exceed the jurisdictional minimum. Plaintiff's claim is therefore distinguishable from that in *Vitran*.

9

1  affidavit by its Human Resources manager, Bonny Nelson, who calculated collective figures for the
2  class size, average hourly wage, weeks worked, and the number of relevant pay periods "based on
3  [her] personal knowledge and on business records maintained by [Defendant] . . . ." The affidavit
4  does not address e.g. how often employees work overtime. All the affidavit provides is a conclusory
5  estimate without evidence into e.g. the number of hours employees typically work each day or week
6  or details about the rest periods they typically take. Without this additional information, the Court is
7  left with only half of an equation in determining the actual amount of overtime incurred by the class
8  or deprivation of meal breaks. *See Cifuentes*, 2012 WL 693930, at *4 (concluding that defendant's
9  assumption about average delay "was based solely on Plaintiff's. . . allegation, rather than evidence"
10 which is "not permissible under the legal certainty test"); *Fletcher v. Toro Co.*, No. 08–cv–2275
11 DMS (WMC), 2009 WL 8405058, at * 8 (S.D. Cal. Feb. 3, 2009) (finding that because Defendant's
12 calculations appear to be based solely on the Complaint's allegations, they lack evidentiary support).

13       In essence, Defendant simply assumes a 100% violation rate across the board. *See*
14 *Lowdermilk*, 479 F.3d at 1000 (finding that defendant's assumption that all employees in the class
15 would be entitled to receive the maximum damages of 30 days of penalty wages was improper
16 because "[m]any employees may have been paid only a few days late and, consequently, would be
17 entitled to fewer days of penalty wages"). In order to reach such a violation rate, Defendant has read
18 Plaintiff's pleading extremely broadly. However, Plaintiff's allegations can reasonably be read as
19 making e.g. only a single claim per week. Defendant's assumption is not warranted and not
20 supported by concrete evidence. Neither the allegations in the complaint in *this* case nor the Nelson
21 declaration establishes to a legal certainty the presumed 100% violation rate which underpins
22 Defendant's analysis of the amount in controversy.

23       Defendant's showing stands in contrast to the Ninth Circuit's unpublished decision in
24 *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 2012 WL 746276 (9th Cir. Mar. 8, 2012)
25 (unpublished). There an assumption of 100% violation rate could reasonably be based on the named
26 plaintiffs' deposition testimony in which they stated "that they were '*never*' allowed to take meal or
27 rest breaks" and that "all the other employees they knew complained about not getting to take *any*
28 meal or rest breaks" and that "*no* employees statewide (which is the entire class) were allowed to

take meal or rest breaks." 2012 WL 746276, slip op. at 3 (emphasis) (unpublished). But Defendant here has not supplied similar testimony or other evidence to support its assumption as to a 100% violation rate.

While the Court agrees that Defendant need not prove its own liability, *see Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010), Defendant "is the only party with access" to its employment records, and its failure to support its calculations with evidence leaves the Court to speculate about the amount in controversy. *See Lowdermilk*, 479 F.3d at 1001. Instead of making assumption of a 100% violation rate across the board, Defendant could, for instance, have taken a sampling of class members to calculate a more informed estimate and include more concrete information about employee hours, breaks and pay periods. *See*, *e.g.*, *Cifuentes.* 2012 WL 693930 at *4. It failed to do so.

Thus, the Court concludes that Defendant has not provided sufficient evidence for the Court to establish the amount in controversy exceeds $5 Million by a legal certainty.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion to Remand this matter. The case is remanded to the state court from which it was removed, and the Clerk of the Court is directed to close the file.

This order disposes of Docket No. 7.

IT IS SO ORDERED.

Dated: August 7, 2012

_____
EDWARD M. CHEN
United States District Judge

11